# In the United States Court of Federal Claims

No. 19-1147
(Filed: October 3, 2019)
Reissued: October 9, 2019[1]

|  |  |  |
|---|---|---|
| HARMONIA HOLDINGS GROUP, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Post-Award Bid Protest; Judgment on the Administrative Record; Bridge Contract; Preliminary Injunction; Permanent Injunction; 48 C.F.R. § 8.405-6; Urgent and Compelling Need |
| THE UNITED STATES, | ) ) ) | |
| Defendant, | ) ) ) | |
| and | ) ) | |
| DEV TECHNOLOGY GROUP, INC., | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

*Walter Brad English*, Maynard, Cooper & Gale PC, Huntsville, AL, for plaintiff.

*Daniel B. Volk*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*William A. Shook*, Law Offices of William A. Shook, PLLC, Washington, DC, for defendant-intervenor.

## OPINION AND ORDER

*SMITH*, **Senior Judge**

This post-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record and plaintiff's Motion for Preliminary Injunction. Plaintiff, Harmonia Holdings Group, LLC ("Harmonia"), filed its Complaint on August 7, 2019, challenging the award of a bridge contract to defendant-intervenor, Dev Technology Group, Inc. ("Dev Tech"), by the United States Customs and Border Protection Agency ("CBP" or "Agency"). *See generally* Complaint (hereinafter "Compl."). Plaintiff asks this Court (1) to "enjoin the Agency from proceeding with performance under the [bridge contract] until

---

[1]     An unredacted version of this opinion was issued under seal on October 3, 2019.  The parties were given an opportunity to propose redactions, but no such proposals were made.

resolution on the merits"; (2) "declare that the Agency's award of the [bridge contract] was arbitrary, capricious, unreasonable, an abuse of discretion, and contrary to law"; (3) "permanently enjoin the Agency from proceeding with performance on the [bridge contract]"; and (4) "award Harmonia such other and further relief as it may deem just and proper." Plaintiff Harmonia Holding Group, Inc.'s [*sic*] Combined Brief in Support of its Motions for Preliminary Injunction and Judgment on the Administrative Record (hereinafter "Pl.'s MJAR") at 18. For the following reasons, plaintiff's Motion for Preliminary Injunction and Motion for Judgment on the Administrative Record are denied, and defendant and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record are granted.

## I.    Background

On April 23, 2019, the Agency awarded a time-and-materials task order for information technology services to Dev Tech under Contract No. GS35F0897R ("the original contract"). Administrative Record (hereinafter "AR") 419. The original contract was an indefinite-delivery indefinite-quantity ("IDIQ") contract issued under Schedule 70 of the General Service Administration's ("GSA") Federal Supply Schedules. *Id.* On May 7, 2019, Harmonia filed a bid protest with this Court challenging that award. *Harmonia Holdings Group, LLC v. United States*, No. 19-674 (Fed. Cl.) ("*Harmonia I*"). Subsequently, two additional disappointed offerors filed separate protests with this Court. As a result of these three directly-related protests, the Agency voluntarily stayed performance on that task order pending resolution of the merits of the protests.

While these protests were pending, CBP determined that the "mission critical nature of this work [could not] tolerate discontinued service," AR 18, and decided to award a short-term sole source bridge contract, AR 31. The Federal Acquisition Regulation ("FAR") allows such an award when "[a]n urgent and compelling need exists, and following the procedures would result in unacceptable delays." 48 C.F.R. § 8.405-6(a)(1)(i)(A) (2019). On May 30, 2019,[2] CBP prepared a detailed limited-sources justification that documented its decision to award the bridge contract to Dev Tech pursuant to FAR 8.405-6(a). The justification further explained the Agency's urgent and compelling need for continued services as follows:

> Without this interim contract, CBP would not have the critical support it needs to process cargo electronically in the [Automated Commercial Environment (ACE)] system, the result would lead to Government revenue loss and delayed import and export cargo clearance. ACE is the backbone of CBP's trade processing and risk management activities and key to implementing international trade covering truck, ocean, air and rail carriers, importers, exporters, and customs house brokers. Delays or failure to process cargo and data jeopardizes the safety of food and medicine, consumer products, meat and poultry, pest control and more. Due to the volume of activity required to protect the safety of the U.S. and support the Nation's commerce, the Agency is in great jeopardy if support services are not available.

---

[2]    The limited-sources justification was dated May 30, 2019. It was subsequently approved, and the time-stamped electronic signatures are dated June 11, 2019, and June 12, 2019. AR 39–40.

> The flow of commerce would be severely disrupted and likely cease if ACE or [the legacy Automated Commercial System (ACS)] are not maintained in a fully operational state.
>
> . . . . Critical information is also shared between ACS, ACE and the Automated Targeting System (ATS). ATS provides CBP Officers with more efficient and consistent methods for targeting high-risk inbound cargo for examination. ATS helps to identify and select import cargo shipments that appear to have a higher likelihood of being associated with terrorism or possibly containing implements of terrorism, narcotics or other contraband in the sea, air (including express mail), rail and truck modes.

AR 35. On May 31, 2019, CBP provided Dev Tech with a draft request for quotation for the bridge contract. AR 41. Dev Tech submitted its proposal on June 1, 2019. AR 170. The Agency subsequently sought and received revisions to that proposal. AR 250; AR 255. On June 13, 2019, CBP issued the final request for quotation, AR 455, and on June 17, 2019, Dev Tech provided its final proposal, AR 271–72. In response, the Agency awarded the bridge contract to Dev Tech on July 2, 2019, to "sustain critical application development and Operation and Maintenance (O&M) support services for cargo system operations, national security and trade enforcement technology under the Automated Commercial Environment (ACE) system and the legacy Automated Commercial System (ACS)." AR 32; *see* AR 419. The bridge contract is for an initial performance period of six months, with a single two-month option period. AR 32.

On August 7, 2019, plaintiff filed its Complaint with this Court. *See generally* Compl. In its Complaint, plaintiff alleged the following: (1) the Agency's decision to award the bridge contract to Dev Tech was irrational, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; and (2) the Agency's decision not to post notice of the bridge contract award was irrational, arbitrary, capricious, an abuse of discretion, and not in accordance with the law. *Id.* at 6–7. On August 26, 2019, plaintiff filed its Motion for Judgment on the Administrative Record and its Motion for Preliminary Injunction. *See generally* Plaintiff's Motion for Judgment on the Administrative Record; *see also* Plaintiff's Motion for Preliminary Injunction (hereinafter "Pl.'s MPI"). On September 6, 2019, defendant and defendant-intervenor filed their respective Cross-Motions for Judgment on the Administrative Record. *See generally* Defendant's Motion to Dismiss, Response to Plaintiff's Motion for Judgment on the Administrative Record, Cross-Motion for Judgment on the Administrative Record, and Response to Plaintiff's Motion for a Preliminary Injunction and to Supplement the Administrative Record (hereinafter "Def.'s CMJAR"); *see also* Defendant-Intervenor's Motion to Dismiss and, in the Alternative, Cross-Motion for Judgment upon the Administrative Record and Response to Plaintiff's Motion for Preliminary Injunction and Motion for Judgment on the Administrative Record (hereinafter "Def.-Int.'s CMJAR").

On September 11, 2019, plaintiff filed its Response and Reply. *See* Plaintiff's Reply in Support of Plaintiff Harmonia Holdings Group, LLC's Motions for Preliminary Injunction and Judgment on the Administrative Record and Reponses to Defendant United States of America's and Defendant-Intervenor Dev Technology Group, Inc.'s Separate Motions to Dismiss and Cross-Motions for Judgment on the Administrative Record (hereinafter "Pl.'s Reply"). On

September 17, 2019, defendant and defendant-intervenor filed their respective Replies. *See generally* Defendant's Reply in Support of its Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record (hereinafter "Def.'s Reply"); *see also* Defendant-Intervenor's Reply to Plaintiff's Response to Defendant's and Defendant-Intervenor's Separate Motions to Dismiss and Defendant-Intervenor's Reply to Plaintiff's Reply to Defendant and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record (hereinafter "Def.-Int.'s Reply"). The Court held oral argument on this matter on September 19, 2019. The parties' motions are fully briefed and ripe for review.

## II.      Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims with the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2018). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*).

The Tucker Act also grants this Court jurisdiction over bid protest actions. 28 U.S.C. § 1491(b) (2018). Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1), which requires that the bid protest be brought by an "interested party." A protestor is an "interested party" if it is an actual or prospective bidder that possesses the requisite direct economic interest. *Weeks Marine, Inc., v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). "To prove a direct economic interest as a putative prospective bidder, [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract." *Id.*; *see also Info. Tech. & Appl. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("To establish prejudice, [the protestor] must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."); *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1580 (Fed. Cir. 1996).

Under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), a party may file a motion for judgment on the administrative record so the Court can assess whether an administrative body—given all disputed and undisputed facts in the record—acted in compliance with the legal standards governing the decision under review. *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 585 (2006)). On a motion for judgment on the administrative record, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. RCFC 52.1; *Bannum*, 404 F.3d at 1354. The Court will then determine whether a party has met its burden of proof based on the evidence in that record. *Bannum*, 404 F.3d at 1355.

When a protestor claims that an agency's decision violates a statute, regulation, or procedure, the protestor must show that such alleged violation was "clear and prejudicial." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001). In assessing a protestor's claims, the Court will "interfere with the government procurement process 'only in extremely limited circumstances.'" *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.-Fed. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989)). The Court cannot substitute its judgment for that of an agency, even if reasonable minds could reach differing conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974); *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (Where the Court "finds a reasonable basis for [an] agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.").

## III.   Discussion

### A.   Standing

In their respective Motions to Dismiss, or, in the alternative, for Judgment on the Administrative Record, both defendant and defendant-intervenor argue that plaintiff lacks the requisite standing to bring this protest. *See generally* Def.'s CMJAR; *see also* Def.-Int.'s CMJAR. Defendant focuses its arguments on the presumption that Harmonia could not have won the bridge contract award because "[CBP] had a thorough understanding of all the proposals that had been submitted for the longer-term contract, including that of Harmonia, and would not have selected any vendor other than [Dev Tech] for the bridge contract." Def.'s Reply at 2 (citing AR 37). In effect, defendant argues that plaintiff did not have a substantial chance of receiving the contract award. Defendant-intervenor makes similar arguments. *See generally* Def.-Int.'s CMJAR. Plaintiff, on the other hand, claims that it need not demonstrate a substantial chance of receiving the contract award, but rather, must establish that it would have submitted a proposal if the solicitation had been made competitive. Pl.'s Reply at 2.

The Court does not agree with defendant and defendant-intervenor's assertions that plaintiff lacks standing to protest the sole-source bridge contract. In *Myers Investigative & Security Services, Inc. v. United States*, 275 F.3d 1366, 1371 (Fed. Cir. 2002), the Federal Circuit held that "[t]o have standing, the plaintiff need only establish that it 'could compete for the contract' if the bid process were made competitive." *Id.* (citing *Impresa*, 238 F.3d at 1334). The court in *Myers* did not, however, supplant the "substantial chance" requirement for standing, stating that "[t]he mere fact that [a protestor] might have submitted a bid in a competitive procurement is not sufficient." *Id.* at 1370; *see also Innovation Dev. Enters. of Am., Inc. v. United States*, 108 Fed. Cl. 711, 724 (2013) ("It is true that the protestor of a sole-source procurement must show that it had a substantial chance of contract award but for the agency's decision to limit competition for the contract."). Thus, in addition to establishing that it would have competed for the sole-source bridge contract, a protestor must also "show that it would have been a qualified bidder." *Myers*, 275 F.3d at 1371; *see also Innovation Dev.*, 108 Fed. Cl. at 724 ("[T]his standard requires only that a protestor's chance of award 'must not have been insubstantial.'") (quoting *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)).

The parties do not dispute that Harmonia would have competed for the sole-source bridge contract, or that Harmonia was a qualified bidder under the original contract. Here, the bridge contract and the original contract involve the exact same scope of work and are funded by the same source. *See* AR 18–20; *see also* AR 399. *Compare* AR 514 *with* AR 361. Thus, while the Court will not speak to the merits of plaintiff's arguments in the related protest, as Harmonia submitted a responsive proposal for the original contract, and the Agency had that information at the time of the bridge contract award, plaintiff is also a qualified bidder for a bridge contract covering the same scope of work. *See Myers*, 238 F.3d at 1370–71; *see also Innovation Dev.*, 108 Fed. Cl. at 724 (A protestor's "status as a qualified bidder that had a substantial chance of contract award in a hypothetical competitive procurement may be established by material before the agency at the time of the sole-source award *and* material provided by [the protestor] during the course of [the] bid protest." (emphasis in original)). Harmonia therefore establishes it has the requisite standing to bring the instant protest.

### B.  Sole Source Award

In its Motion for Judgment on the Administrative Record, plaintiff argues that the Agency's decision to award a sole-source bridge contract to Dev Tech was arbitrary, capricious, and in violation of the automatic Competition in Contracting Act ("CICA") stay. Pl.'s MJAR at 5–6. The crux of plaintiff's argument is the underlying belief that the Agency ignored the voluntary stay by allowing Dev Tech to immediately begin performing under the original contract under the guise of a bridge contract. *See* Pl.'s MJAR at 8 ("In every meaningful way, the Sole Source **is** the Task Order.") (emphasis in original); *see also* Pl.'s Reply at 6 ("[T]he Agency's and Dev Tech's arguments show that they consider the Sole Source and the Task Order one and the same."). The Court does not agree with plaintiff's underlying assumption.

The Court reviews bid protests under the standard set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 1491(b)(4) (2018). The APA provides that the Court may only set aside the Agency's procurement action if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009). Moreover, in analyzing whether a procurement decision should be set aside, the preeminent question is whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000). Agency procurement decisions are entitled to "a presumption of regularity," *see Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971)), and "*[d]e minimis* errors in the procurement process do not justify relief." *Golden Mfg. Co. v. United States*, 107 Fed. Cl. 264, 271 (2012).

As a threshold matter, an agency's decision to enter into a voluntary stay of performance during the pendency of a bid protest is not an agreement to entirely forego those services. An agency's willingness to voluntarily stay performance provides a benefit to the plaintiff, to the Court, and to the effective administration of justice alike. Often, in order to confer that benefit, it becomes necessary for the agency to enter into a bridge contract to avoid a gap in service,

particularly in circumstances that could impact the health, safety, or national security of the United States and its citizens.  Awarding a bridge contract to avoid such a gap in service—even in a situation in which the bridge contract covers the exact same scope of work as the underlying contract—is fundamentally different from violating a stay.

Plaintiff further alleges that the award violated FAR 1.102-2(c), which states that the government should "[c]onduct business with integrity, fairness, and openness."  48 C.F.R. § 1.102-2(c) (2019).  While the government should always strive to act accordingly, it is well established that FAR 1.102-2(c) is not a source of any judicially enforceable right.  *See Info. Scis. Corp. v. United States*, 85 Fed. Cl. 195, 202 (2008); *see also AT&T v. United States*, 307 F.3d 1374, 1380 (Fed. Cir 2002) ("[C]autionary and informative regulations and directives provide only internal governmental direction . . . [but] provide no remedy for private parties in a judicial forum.").  As such, even if this Court were to determine that the Agency's actions violated FAR 1.102-2(c), that alone would not be enough to overturn the Agency's award decision.

Next, Harmonia argues that the Agency violated FAR 8.405-6(a)(2)(ii), which states that "[i]n the case of an order or [Blanket Purchase Agreement] permitted under paragraph (a)(1)(i)(A) of this section, the justification shall be posted within 30 days after award."  48 C.F.R. § 8.405-6(a)(2)(ii) (2019); Pl.'s MJAR at 9.  Upon careful review of the record, the Court concludes that the requirements under FAR 8.405-6(a)(2)(ii) have been met.  First, the award date—the date the contracting officer accepted and signed the award—was July 2, 2019, not June 17, 2019, as the plaintiff suggests.  AR 419.  That date is within thirty days of CBP posting its limited sources justification on August 1, 2019.  Second, FAR 8.405-6(a)(1)(i)(A) provides that awards may be made based on a limited sources justification when "[a]n urgent and compelling need exists."  48 C.F.R. § 8.405-6(a)(1)(i)(A) (2019).  It seems clear to this Court that an "urgent and compelling need" exists in maintaining services for a system that "helps to identify and select import cargo shipments that appear to have a higher likelihood of being associated with terrorism or possibly containing implements of terrorism, narcotics or other contraband . . . ."  AR 35.

Finally, plaintiff argues that CBP did not conduct sufficient market research in order to make a sole-source award.  Pl.'s MJAR at 10.  The Court does not agree.  When an agency's justification for issuing a sole-source award is based on "an urgent and compelling need," and is estimated to exceed the simplified acquisition threshold, the agency need only provide a "description of the market research conducted among schedule holders and the results or a statement of the reason market research was not conducted."  48 C.F.R. § 8.405-6(c)(2)(vi) (2019).  The record clearly reflects the Agency's reason why it did not conduct additional market research—it performed extensive market research in 2017, 2018, and 2019 prior to awarding the original contract.  AR 38.  Specifically, the Agency indicated that the scope of work under the bridge contract mirrored that of the original contract.  *Id.*  As a result, the Agency had extensive market research from 2017 through 2019, as well as a complete understanding of the twelve most eligible offerors, their potential proposals, and their qualifications for a bridge contract award.  *See id.*  Thus, CBP provided "a coherent and reasonable explanation of its exercise of discretion," *AugustaWestland North America, Incorporated v. United States*, 800 F.3d 1326, 1332 (Fed. Cir. 2018), such that its justification for the sole-source bridge contract was neither

arbitrary not capricious.  The specific circumstances surrounding this procurement—a full understanding of the potential offerors and proposals, a sufficient justification for the Agency's decision, and the "urgent and compelling need" for those services to continue—are sufficient for this Court to stay its hand.  Accordingly, the Court finds that the Agency did not act in an arbitrary or capricious manner in awarding the sole-source bridge contract to Dev Tech.

### C.  Preliminary and Permanent Injunction; Motion to Supplement

On August 26, 2019, plaintiff filed its Motion for Preliminary Injunction along with its Motion for Judgment on the Administrative Record.  *See generally* Pl.'s MPI.  As plaintiff failed to demonstrate success on the merits or show that the Agency's actions were arbitrary, capricious, or otherwise in violation of law, plaintiff is not entitled to either a preliminary or permanent injunction.  Accordingly, the Court need not analyze the remaining factors for injunctive relief.

Plaintiff also filed a motion to supplement the administrative record on August 26, 2019. *See generally* Plaintiff Harmonia Holdings Group, LLC's Motion to Supplement the Administrative Record.  Upon careful review of the parties' arguments, the Court does not believe that supplementation is necessary for effective and efficient administration of justice.  As such, plaintiff's Motion to Supplement the Administrative Record is hereby **DENIED**.

### IV.  Conclusion

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is hereby **DENIED**.  Additionally, plaintiff's MOTION for Preliminary Injunction and MOTION to Supplement the Administrative Record are hereby **DENIED**.  Defendant and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record are hereby **GRANTED**.  The Clerk is directed to enter judgment in favor of defendant and defendant-intervenor, consistent with this opinion.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith
Senior Judge

8